Daniel S. Lubell
Eleni D. Theodosiou-Pisanelli
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

*Counsel to PricewaterhouseCoopers Inc.,*
*Receiver for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| FLETCHER LEISURE GROUP LTD., | Case No. 13-_____ (____) |
| Debtor in a Foreign Proceeding. | |
| In re | Chapter 15 |
| FLETCHER LEISURE GROUP INC. / LE GROUPE DE LOISIRS FLETCHER INC., | Case No. 13-_____ (____) |
| Debtor in a Foreign Proceeding. | |
| In re | Chapter 15 |
| 9266-4382 QUÉBEC INC., | Case No. 13-_____ (____) |
| Debtor in a Foreign Proceeding. | |

**VERIFIED CHAPTER 15 PETITION FOR**
**RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF**

PricewaterhouseCoopers Inc. ("PwC" or the "Receiver"), as Canadian Court–

appointed receiver and duly authorized foreign representative for 9266-4832 Québec Inc.

("HoldCo"), Fletcher Leisure Group Inc./Le Groupe de Loisirs Fletcher Inc. ("Fletcher

Canada"), and Fletcher Leisure Group Ltd. ("Fletcher US" and, together with HoldCo and Fletcher Canada, the "Fletcher Entities" or "Debtors"), respectfully submits this verified petition seeking recognition of a foreign main proceeding.  In support thereof, the Receiver respectfully states as follows:

## PRELIMINARY STATEMENT

1.    By this Verified Petition and the form Petitions filed herewith (together, the "Verified Petition"),[1] the Receiver seeks recognition of (a) the orders for each of the Fletcher Entities (collectively, the "Receivership Order")[2] entered by the Superior Court (Commercial Division) for the District of Montreal, Province of Québec (the "Canadian Court") granting Salus Capital Partners, LLC's ("Salus") October 18, 2013 Motion for the Issuance of an Order Appointing a Receiver under section 243 of Canada's Bankruptcy and Insolvency Act (the "BIA") and (b) the receivership proceedings in the Canadian Court under the BIA (the "Canadian Proceeding") as a foreign main proceeding.

2.    The Receiver has commenced these Chapter 15 cases ancillary to the Canadian Proceeding and respectfully files this Verified Petition with the required accompanying documentation pursuant to section 1504 and 1515 of title 11 of the United States Code (the "Bankruptcy Code").  The Verified Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code.  Moreover, the relief requested by the Receiver is well within the scope of Chapter 15 of the Bankruptcy Code, which authorizes this Court to (i) recognize a "foreign proceeding" upon the proper commencement of a case under Chapter 15 by a "foreign representative" and (ii) grant assistance in the United States to such foreign representative in

---

1.   This Verified Petition is verified by Bernard Brunet, Senior Vice President of PwC, as evidenced by his Statement of Verification attached hereto as **Exhibit A**.

2.   Certified copies of the orders, collectively the Receivership Order, are attached hereto as **Exhibit B**.

connection with the foreign proceeding.[3]  Based on the foregoing and the reasons described

herein, the Receiver is entitled to an order granting recognition to the Canadian Proceeding under

Chapter 15 of the Bankruptcy Code.

3.    In addition to the above, in this Chapter 15 proceeding, the Receiver will

seek entry of orders[4]:

(a)    Directing joint administration of cases under Chapter 15 of the
Bankruptcy Code;

(b)    Authorizing the Receiver to file a consolidated list of foreign
proceeding administrators, litigation parties, and entities against
whom provisional relief is sought;

(c)    Granting an interim stay under section 1519(a)(1) of the
Bankruptcy Code of creditor actions against the Receiver or the
Fletcher Entities commenced in the United States, or against the
Fletcher Entities' business, assets, or property located in the United
States;

(d)    After notice and a hearing, extending the stay on a permanent basis
under section 1521(a)(1)-(3) of the Bankruptcy Code;

(e)    Recognizing the Receivership Order on an immediate and
provisional basis, to the extent that it authorizes the appointment of
the Receiver and allows it to sell substantially all of the Fletcher
Entities' assets free and clear of liens, claims, and encumbrances,

---

3.  In support of the Verified Petition, the Receiver has filed contemporaneously herewith the *Affidavit of Bernard Brunet in Support of (i) Verified Chapter 15 Petition for Recognition of Foreign Proceeding and Related Relief and (ii) Motion for Emergency and Final Relief Pursuant to 105(a), 1519, 1520, and 1521 of the Bankruptcy Code* (the "Brunet Affidavit"), and the *Memorandum of Law in Support of (i) Verified Chapter 15 Petition for Recognition of Foreign Proceeding and Related Relief and (ii) Motion for Emergency and Final Relief Pursuant to Sections 105(a), 1519, 1520, and 1521 of the Bankruptcy Code* ("Memorandum of Law"), both incorporated herein by reference.

4.  In addition to the Verified Petition, the following documents are being filed concurrently therewith seeking additional relief from the Court: (a) *Motion for Emergency and Final Relief Pursuant to Sections 105(a), 1519, 1520, and 1521 of the Bankruptcy Code* ("Motion for Related Relief")*;* (b) *Ex Parte Motion for Entry of an Order Under Federal Rule of Bankruptcy Procedure 1007(a)(4) Authorizing the Fletcher Entities to File a Consolidated List of Foreign Proceeding Administrators, Litigation Parties, And Entities Against Whom 11 U.S.C. § 1519 Provisional Relief Is Sought* ("Consolidated List Motion"); (c) *Ex Parte Motion Pursuant to Federal Rule of Bankruptcy Procedure 1015(b) for Order Directing Joint Administration of Cases Under Chapter 15 of the Bankruptcy Code* ("Joint Administration Motion"); and (d) *Ex Parte Motion of Receiver for an Order (i) Specifying Form and Manner of Service and Notice, (ii) Scheduling Hearing on Recognition and Additional Relief, and (iii) Setting Deadline for Objections* ("Notice Motion").

to borrow funds, and to continue using the Debtors' pre-petition
cash management system (as modified by agreement between
Salus and the Receiver);

(f)     Recognizing the Receivership Order and recognizing all orders of
the Canadian Court in the Canadian Proceeding on a final basis
after entry of the recognition order, including such other, future
orders of the Canadian Court which authorize the sale of the
Fletcher Entities' assets free and clear of liens, claims, and
encumbrances, the borrowing of funds, and the use of the Debtors'
pre-petition cash management system consistent with the
Receivership Order pursuant to sections 1517, 1520(a)(2), and
1521(a)(7) of the Bankruptcy Code; and

(g)     Granting a motion (i) specifying the form and manner of service
and notice; (ii) scheduling a hearing on recognition and additional
relief; and (iii) setting a deadline for objections.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in

this district pursuant to 28 U.S.C. § 1410.

5.      The statutory predicates for the relief requested herein are sections 105(a),

1504, 1507, 1515, 1517, and 1521 of the Bankruptcy Code.

## BACKGROUND

**I.      The Fletcher Entities and Their Center of Main Interest in Québec, Canada**

6.      Fletcher Canada and HoldCo are corporations duly incorporated under the

*Canada Business Corporations Act*, having their head office at 104, rue Barr, Montréal, Québec,

H4T 1Y4.  (*See* Brunet Affidavit ¶ 6.)

7.      Fletcher Canada manufactures and sells golf and ski apparel to retail stores

under various well-known owned and licensed brand names, including Sunice (owned), AUR

Golf (licensed), Tommy Hilfiger Golf (licensed) and Bridgestone Golf (licensed).  Fletcher

Canada leases its head office and warehouse premises in Ville Saint-Laurent, Québec, for the

storage of inventory which is purchased and shipped from Asia to be embroidered at the Ville St-Laurent premises.  Fletcher Canada currently employs approximately 92 employees in Canada, 55 of whom are subject to temporary layoffs which took place last week for the purpose of reducing expenses. No collective bargaining agreement exists between these employees and Fletcher Canada, and Fletcher Canada does not have any pension obligations relating to these employees.  (*See* Brunet Affidavit ¶ 7.)

8.      HoldCo is the parent holding company and sole shareholder of Fletcher Canada and is strictly a holding company; it has no operations, facilities, pension obligations, trade payables, receivables, etc. Holdco is a guarantor of the secured debt to Salus, owes unsecured debt to a third party creditor, and is a secured lender to Fletcher Canada, all as described in more detail below. The only employees of HoldCo are the principals, Mark and Allan Fletcher, and the Chief Financial Officer of the Debtors.  (*See* Brunet Affidavit ¶ 8.)

9.      Fletcher US is a corporation duly incorporated under the laws of the State of New York, having an elected domicile at 104, rue Barr, Montréal, Québec, H4T 1Y4. Fletcher US and Fletcher Canada are managed on a consolidated basis, and Fletcher US is also a wholly owned subsidiary of HoldCo.  Fletcher US acts in essence as a facilitator of U.S. sales for Fletcher Canada. It has no office, warehouse or other premises in the United States, with substantially all corporate, banking, strategic and management functions taking place at Fletcher Canada's premises, in Ville Saint-Laurent, Québec.  (*See* Brunet Affidavit ¶ 9.)

10.      Fletcher US generally does not own any inventory. Inventory is owned by Fletcher Canada and is shipped directly from Fletcher Canada's warehouse in the United States to U.S. customers. Prior to delivering the inventory to the U.S. customer, Fletcher Canada sells the inventory to Fletcher US, and immediately thereafter Fletcher US records a sale and

corresponding invoice to the U.S. customer. This system has been in place since September,

2013. The inventory purchased by Fletcher US is recorded as an intercompany payable from

Fletcher US to Fletcher Canada and the inventory sold by Fletcher US is recorded as a receivable

to Fletcher US from the customer which the customer is obligated to pay to Fletcher US based on

the payment terms of the sales invoice.  Fletcher US's only employees are two Vice-Presidents

of U.S. Sales, one of whom has been temporarily laid off.  Both employees reside in the United

States.  (*See* Brunet Affidavit ¶ 10.)

11.    Fletcher US's primary bank account, which it shares with Fletcher

Canada, is located in Canada, and Fletcher US's treasury management functions, including

accounts receivable and accounts payable, are all in Québec. Fletcher US does operate a TD

bank account located in New York, however, the primary activity of this account is limited to

facilitating payments to U.S. customs.  The directors of Fletcher US, being Mark Fletcher, Allan

Fletcher and Eleanor Fletcher, all reside in Québec. All board of directors meetings of Fletcher

US take place at Fletcher Canada's head office in Québec.  Fletcher US is governed by Fletcher

Canada's management team out of Ville Saint-Laurent, Québec.  (*See* Brunet Affidavit ¶ 11.)

12.    As the Canadian Court declared in the Receivership Order, the center of

main interest of the Fletcher Entities, including Fletcher US, is Québec, Canada.  (*See*

Receivership Order ¶ 44.)  The Fletcher Entities, including Fletcher US, have each consented to

the entry of the Receivership Order in the Canadian Court.  (*See* Brunet Affidavit ¶ 12.)

## II.    **The Fletcher Entities' Prepetition Debt Structure**

### A.    *Salus and the Credit Agreement*

13.    On February 14, 2013 a credit agreement was entered into between

Fletcher Canada, as borrower, HoldCo, Fletcher US and Fletcher UK, as guarantors (collectively,

the "Corporate Guarantors"), and Salus Capital Partners, LLC ("Salus"), as collateral agent,

administrative agent and lender (the "Credit Agreement"), pursuant to which the initial

Aggregate Revolving Commitment (as defined in the Credit Agreement) was up to

CAN$21,000,000 (the "Credit Facilities").  The Corporate Guarantors are each irrevocably,

unconditionally and solidarily liable to Salus in respect of any and all obligations of Fletcher

Canada under, *inter alia*, the Credit Agreement, as appears from the Credit Agreement itself and

from a copy of the Guarantee Agreement between each of the Fletcher Entities and Salus.  (*See*

Brunet Affidavit ¶ 13.)

14.    The Credit Facilities are secured by the Debtors' assets under, among

other things, the following security agreements:

(a)    Deed of Hypothec (a type of security under Québec Civil Law) and Issue of Bonds dated February 15, 2013 granted by the Debtors in favour of Salus, registered in the Province of Québec at the Register of Personal and Movable Real Rights (the "RPMRR") on February 15, 2013 under number 13-0115124-0001;

(b)    25% Demand Bond in the principal amount of CAN$28,000,000, dated February 15, 2013 and evidenced by certificate no. 01, issued by Fletcher Canada to Salus;

(c)    Pledge of Bond Agreement dated February 15, 2013 granted by Fletcher Canada in favour of Salus;

(d)    Canadian General Security Agreement between Fletcher Canada and HoldCo and Salus dated February 14, 2013 registered in the Province of Ontario at the Personal Property Security Registration System on February 11, 2013 (f/n 684635994) under number 20130211 1342 1862 8586;

(e)    Security Agreement dated February 14, 2013 between Fletcher Canada and Fletcher US and Salus registered under the UCC against Fletcher Canada in the District of Columbia and against Fletcher US in the State of New York on February 13, 2013;

(f)    Charge Over Shares dated February 14, 2013 whereby Fletcher Canada charged all of its shares in Fletcher UK to Salus; and

(g)    Trademark Security Agreement dated February 14, 2013 between Fletcher Canada and Salus registered at the USPTO.

(Collectively, the "<u>Security</u>").  (*See* Brunet Affidavit ¶ 14.)

15.     Essentially, the Security covers the universality of all of each Debtors' movable (*i.e.*, personal) property, corporeal and incorporeal, present and future, of any nature whatsoever and wheresoever situate, the whole including, without limitation, the universalities of present and future property of each of the Debtors, except for specific equipment under leasing contracts or lease agreements.  The Security also provides for the appointment of a receiver following an event of default thereunder, and the Debtors have irrevocably consented to the appointment of such receiver. (*See* Brunet Affidavit ¶ 15.)

16.     As of October 15, 2013, the Debtors were indebted to Salus under the Credit Facilities in the aggregate amount of CAD$11,589,798.74, plus applicable fees and expenses.  (*See* Brunet Affidavit ¶ 16.)

**B.     Other Secured Creditors**

17.     Fletcher Canada had approximately CAD$2,717,000 of junior secured debt to unrelated parties, which can be described as follows:

    (a)     CAD$717,000 owed to Investissements Québec ("<u>IQ</u>"), secured by the universality of Fletcher Canada's movable assets and guaranteed by Fletcher US pursuant to a deed of hypothec registered at the RPMRR on March 1, 2011; and

    (b)     CAD$2 million owed to 156541 Canada Inc. ("<u>Canada Inc.</u>"), secured by the universality of Fletcher Canada's movable assets pursuant to a deed of hypothec registered at the RPMRR on January 24, 2012 and another one registered on February 29, 2012.

(*See* Brunet Affidavit ¶ 17.)

18.     Fletcher Canada also owes CAD$2.5 million to HoldCo, in respect of which HoldCo holds junior security over the universality Fletcher Canada's movable assets. This amount is guaranteed by Fletcher UK and Fletcher US, the latter of whom has granted a security interest to HoldCo in respect of its guarantee.  (*See* Brunet Affidavit ¶ 18.)

19.    At or about the time the Credit Agreement was signed, the following

agreements were entered into to confirm Salus's first ranking security position:

(a)    *Cession de rang en faveur de Salus Capital Partners, LLC* dated
February 19, 2013 and registered in the RPMRR on February 26,
2013 under number 13-0142762-0001, by which IQ subordinated
its rank to Salus;

(b)    An assignment of rank by Canada Inc. to Salus by way of an
Intercreditor Agreement dated February 12, 2013 and registered in
the RPMRR February 26, 2013 under number 13-0142762-0003;
and

(c)    An assignment of rank by HoldCo to Salus by way of an
Intercreditor Agreement dated February 14, 2013 and registered in
the RPMRR February 26, 2013 under number 13-0142762-0002

(*See* Brunet Affidavit ¶ 19.)

## C.    *Unsecured Creditors*

20.    As of October 15, 2013, Fletcher Canada and Fletcher US owed

approximately $5.8 million on a collective basis to their trade suppliers, including current and

past-due amounts.  Also, the Fletcher Canada has the following existing and contingent

unsecured debts (in approximate amounts):

(a)    CAD$1.3 million owed to Delmar International Inc. pursuant to an
unsecured loan;

(b)    CAD$3 million claimed by Adams Golf for licensing fees. This
amount is in dispute by Fletcher Canada;

(c)    CAD$2.1 million owed to the Canada Border Services Agency
("CBSA") as of May 1, 2013;

(d)    CAD$230,000 owed to Omnitrans Inc. in respect of freight
forwarding;

(e)    CAD$68,000 owed to NDO America, Inc. in respect of
warehousing fees; and

(f)    CAD$3 million owed to directors and another individual pursuant
to certain promissory notes.

(*See* Brunet Affidavit ¶ 20.)

21.    In addition, HoldCo owes CAD$2.5 million to *Fonds de Solidarité des travailleurs du Québec (F.T.Q.)* ("FTQ") pursuant to an unsecured loan.  (*See* Brunet Affidavit ¶ 21.)

22.    In addition, Fletcher US may be liable to U.S. Customs and Border Protection ("USCBP"), although such liability is disputed by Fletcher US. Fletcher US was the "importer of record" for certain inventory going into the U.S. from Canada. USCBP has disputed the value of duty paid by Fletcher US for certain imported goods. Fletcher US has filed a protest objecting to USCBP's position and asserted that certain amounts paid by it should be refunded. Fletcher US's liability, if any, to USCBP, up to US$200,000, is secured by a surety bond in the amount of US$200,000.  (*See* Brunet Affidavit ¶ 22.)

### D.    *Cash Management System*

23.    On February 14, 2013 a cash management system was created for Fletcher Canada and Fletcher US pursuant to Blocked Accounts Agreements (collectively the "Current Cash Management System"). Under the Current Cash Management System, all receipts of all Debtors are deposited into US and Canadian dollar blocked accounts at TD Bank, which accounts are swept on a daily basis and applied against the revolving loan under the Credit Agreement. Disbursements are made out of non-blocked accounts, which are funded by borrowings under the revolving loan under the Credit Agreement. Fletcher Canada submits borrowing requests to Salus and funding is made in accordance with a borrowing base formula. (*See* Brunet Affidavit ¶ 23.)

24.    In its Motion for Issuance, Salus requested that the Receiver be authorized to continue the Current Cash Management System as may be modified by agreement of Salus

and the Receiver (the "<u>Cash Management System</u>").  (*See* Brunet Affidavit ¶ 24.)  The

Receivership Order granted such request.  (*See* Receivership Order ¶ 21.)

**III.    <u>Events Leading to Receivership</u>**

25.    Since 2011, the Debtors have faced various financial difficulties, resulting

from significant operating losses (which have continued since then) and from the loss of a major

licensing agreement for golf equipment.  At that time, the Debtors were funded via credit

facilities provided by TD Bank. There were various defaults by the Debtors arising from failures

to meet covenants which eventually led to limited borrowing capacity for the Debtors, further

impairing their operations.  (*See* Brunet Affidavit ¶ 25.)

26.    The Debtors obtained loans from FTQ, IQ and Canada Inc. in late 2012,

but required additional financing to continue funding operations.  Therefore, in December 2012,

the Debtors entered into discussions with Salus, who provided financing pursuant to the Credit

Agreement on February 14, 2013. At the time of the refinancing the credit facility from TD was

terminated along with the security granted to TD by the Debtors.  (*See* Brunet Affidavit ¶ 26.)

27.    As a result of their inability to recover sustainable levels of sales and cash

flow, on May 30, 2013, the Debtors confirmed and acknowledged the occurrence and

continuance of events of default pursuant the Credit Agreement and the Guarantee Agreement as

a result of Fletcher Canada breaching Article 7.18 of the Credit Agreement regarding minimum

EBITDA requirements (the "<u>Initial Events of Default</u>").  (*See* Brunet Affidavit ¶ 27.)

28.    Notwithstanding the Initial Events of Default, on May 30, 2013, Salus

agreed, under various conditions, to forbear from its recourses until July 1, 2013 in order to

allow the Debtors to find a solution to their financial difficulties (the "<u>First Forbearance</u>

<u>Agreement</u>").  (*See* Brunet Affidavit ¶ 28.)

29.    During the pendency of the First Forbearance Agreement the following

additional events of default occurred:

(a)    the failure of Fletcher Canada to observe the covenant regarding
minimum EBITDA requirements set forth in Article 7.18 of the
Credit Agreement;

(b)    the non-compliance of the updated 13 week cash flow delivered by
Fletcher Canada to Salus on June 19, 2013 for the week ending
June 15, 2013;

(c)    the failure of Fletcher Canada to observe the covenant set forth in
Section 3(v) of the First Forbearance Agreement regarding
delivery of at least one letter of intent by June 24, 2013;

(d)    the non-compliance of the updated 13 week cash flow delivered by
Fletcher Canada to Salus on June 27, 2013 for the week ended
June 22, 2013;

(e)    the non-compliance of the updated 13 week cash flow delivered by
Fletcher Canada to Salus on July 3, 2013 for the week ended June
29, 2013; and

(f)    the non-compliance of the updated 13 week cash flow delivered by
Fletcher Canada to Salus on July 10, 2013 for the week ended July
5, 2013;

(collectively, the "New Events of Default").  Salus reserved its rights as a result of these New

Events of Default.  (*See* Brunet Affidavit ¶ 29.)

30.    The forbearance period under the First Forbearance Agreement expired on

July 1, 2013 and on July 16, 2013, notwithstanding the New Events of Default, Salus agreed,

under various conditions, to forbear from its remedies until October 10, 2013 in order to allow

the Debtors additional time to find a solution to their financial difficulties pursuant to a new

forbearance agreement (the "Second Forbearance Agreement").  (*See* Brunet Affidavit ¶ 30.)

31.    As a result of the occurrence of the many Events of Default and

Termination Events (as defined in the Second Forbearance Agreement), Salus has reserved its

rights to exercise its rights and remedies available to it under the Credit Agreement, Security, and otherwise at law.  (*See* Brunet Affidavit ¶ 31.)

32.    On or about October 9, 2013, the Debtors reduced their workforce by approximately 65% by way of temporary layoffs.  Also, a number of creditors have raised serious concerns with regard to the Debtors' financial circumstances and ability to continue operations. The Debtors have been managing the situation by advising creditors that they are working on a long term solution.  (*See* Brunet Affidavit ¶ 32.)

33.    On October 15, 2013, Salus confirmed to the Debtors that the forbearance period under the Second Forbearance Agreement expired on October 10, 2013, that all of Salus's rights and remedies against the Debtors were immediately enforceable, no further forbearance period would be provided, and that Salus would seek the appointment of a receiver over the Debtors' assets. (*See* Brunet Affidavit ¶ 33.)

## IV.    The Sale Process

34.    In May 2013, the Debtors decided that it would be necessary to sell the business and assets of the Debtors in order to satisfy their indebtedness to creditors.  (*See* Brunet Affidavit ¶ 34.)

35.    On May 16, 2013, the Debtors engaged Kurt Salmon Capital Advisors, Inc. ("Kurt Salmon") to take carriage of the sale process (the "Sale Process") and agreed to provide Salus with a weekly report as to the progress thereof. Kurt Salmon's mandate is set out in the engagement letter dated May 16, 2013 (the "Kurt Salmon Engagement Letter").  The purpose of the Sale Process was to identify one or more purchasers for the Debtors' business and assets. (*See* Brunet Affidavit ¶ 35.)

36.    So far, Kurt Salmon has assisted the Debtors in preparing a data room and confidential information memorandum and identifying numerous potential purchasers from Kurt

Salmon's industry database and resource services; prepared and sent a teaser letter to prospective

buyers' entered into confidentiality agreements with prospective buyers; followed up with

prospective buyers; and entered into preliminary negotiations. (*See* Brunet Affidavit ¶ 36.)

   37. On or about August 1, 2013, the Debtors engaged Richter Advisory Group

Inc. ("<u>Richter</u>"), an affiliate of its independent auditors, to advise on the Sale Process as well as

liaison with Salus, which included assisting in the preparation of short term cash flows,

monitoring adherence thereto, and providing up to date financial information on a weekly basis

to Salus about the Debtors' financial situation and the Sale Process. The scope of Richter's

mandate is set out in the engagement letter dated August 1, 2013 (the "<u>Richter Engagement</u>

<u>Letter</u>"). (*See* Brunet Affidavit ¶ 37.)

   38. As a result of the efforts of the Debtors and Kurt Salmon, a potential going

concern purchaser for the Debtors' business was identified on or about August 15, 2013. The

potential purchaser's expression of interest contemplated a sale of the Debtors' assets via a court

appointed receivership process.  Although extensive due diligence was conducted by the

potential purchaser, the potential purchaser recently advised the Debtors that it would not pursue

the opportunity to acquire the Debtors assets.  (*See* Brunet Affidavit ¶ 38.)

   39. The Debtors, with the assistance of Richter and Kurt Salmon, quickly re-

started discussions with other potentially interested parties identified through the Sale Process.

Given the Debtors' financial position it is critical that these discussions be concluded with

urgency. It is also evident that any potential purchaser will require the benefit of a court order

approving the sale and transferring the assets free and clear of liens, claims and encumbrances,

known as a vesting order, as a condition precedent for consummating any transaction.  (*See*

Brunet Affidavit ¶ 39.)

**V.**      **Receivership and The Canadian Proceedings**

40.      On October 18, 2013, Salus, as the principal secured lender of the Fletcher

Entities, filed the Motion for Issuance with the Canadian Court.  On October 22, 2013, the

Canadian Court entered the Receivership Order.  (*See* Brunet Affidavit ¶ 40.)

41.      The Receivership Order appointed PwC as Receiver of the Debtors

(Receivership Order ¶ 8), and declared "that the centre of main interest of the Debtors is in

Québec" (Receivership Order ¶ 44).

42.      The Receivership Order also provided the Receiver with authorization to

> apply . . . for orders which aid and complement the
> [Receivership] Order and any subsequent orders of this Court
> and, without limitation to the foregoing, an order under
> Chapter 15 of the U.S. Bankruptcy Code, for which the
> Receiver shall be the foreign representative of the Debtors.
> All courts and administrative bodies of all such jurisdictions
> are hereby respectively requested to make such orders and to
> provide such assistance to the Receiver as may be deemed
> necessary or appropriate for that purpose.

(Receivership Order ¶ 45.)  Further, the Receivership Order requested "the aid and recognition of

. . . . any federal or state court or administrative body in the United States . . . to act in aid of and

to be complementary to this Court in carrying out the terms of the Order."  (*Id.* ¶ 46.)

43.      In addition to the above, the Receivership Order authorized the Receiver

to take, among other things, the following actions;

> (a)      take possession of the Debtors' Property (as that term is defined in
> the Receivership Order) (Receivership Order ¶ 10.1);
>
> (b)      take certain actions related to the preservation of such Property (*id.*
> ¶ 10.2);
>
> (c)      manage, operate, and carry on, all or any part of the Debtors'
> operations, including, but not limited to continuing the engagement
> of Kurt Salmon and Richter  (*id.* ¶ 10.3);

(d)     carry out the sale or the disposition of the Property in the ordinary course of business of the Debtors (*id.* ¶¶ 10.4 and 23);

(e)     retain the services of any lawyer of other professionals to carry out its functions (*id.* ¶ 13); and

(f)     continue to utilize, in the name of and on behalf of the Debtors or any one of them, the Cash Management System (*id.* ¶ 21).

## RELIEF SOUGHT

44.     By this Verified Petition, the Receiver seeks (a) recognition of the Canadian Proceeding as a foreign main proceeding pursuant to section 1502(4) of the Bankruptcy Code; and (b) all relief afforded to a foreign main proceeding automatically upon recognition pursuant to section 1520 of the Bankruptcy Code.

45.     In addition, by the accompanying Motion for Related Relief, the Receiver seeks the following additional relief: (a) an interim stay against creditor actions pursuant to section 1519 of the Bankruptcy Code and ultimately an extension of that stay on a permanent basis pursuant to section 1521 of the Bankruptcy Code; (b) all relief that may be afforded foreign main proceedings pursuant to sections 1507 and 1521 of the Bankruptcy Code; and (c) such other and further relief as is appropriate under the circumstances pursuant to sections 105(a) and 1507 of the Bankruptcy Code.

## BASIS FOR RELIEF

46.     For the reasons more fully discussed in the Memorandum of Law, the Canadian Proceeding is entitled to recognition under section 1517 of the Bankruptcy Code because:

(a)     the Canadian Proceeding is (i) a foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code, and (ii) a foreign main proceeding within the meaning of section 1502(4) of the Bankruptcy Code, because the Canadian Proceeding is pending in the country where the Debtors have the center of their main interests;

16

(b)     the Receiver is a foreign representative within the meaning of section 101(24) of the Bankruptcy Code; and

(c)     the Verified Petition meets the requirements of section 1515 of the Bankruptcy Code.

47.     Moreover, recognizing the Canadian Proceeding would not be "manifestly contrary" to the public policy of the United States, as prohibited by section 1506 of the Bankruptcy Code.  In fact, granting such recognition will promote the United States' public policy of respecting foreign proceedings, as articulated in sections 1501(a) and 1508 of the Bankruptcy Code, *inter alia*, and further cooperation between courts to the maximum extent possible, as mandated by section 1525(a) of the Bankruptcy Code.  Thus, the conditions for mandatory recognition of the Canadian Proceeding under section 1517 of the Bankruptcy Code have been satisfied.

## NOTICE

48.     As more fully set forth in the Receiver's accompanying Notice Motion, the Receiver proposes to serve this Verified Petition and the Notice Motion upon (i) all persons or bodies authorized to administer foreign proceedings of the Debtors, (ii) all provisional entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code, (iii) all parties to litigation pending in the United States in which any of the Debtors are a party as the time of filing of the Verified Petition, (iv) the United States Trustee, and (v) such other entities that this Court may direct.

[ *Remainder of Page Intentionally Left Blank* ]

## CONCLUSION

WHEREFORE, the Receiver respectfully requests that this Court grant this

Verified Petition and (i) enter the proposed order attached as **Exhibit C** hereto recognizing the

Canadian Proceeding as a foreign main proceeding; (ii) enter the orders requested in the

accompanying Motion for Related Relief in the forms attached thereto as Exhibits A and B,

recognizing the Canadian Proceeding as a foreign main proceeding, granting an interim stay

under section 1519 and extending it on a permanent basis under section 1521, and recognizing

the Receivership Order and other orders granted in the Canadian Proceeding; (iii) enter the order

requested in the accompanying Notice Motion; and (iv) grant such other and further relief as this

Court may deem just and proper.


Dated: New York, New York             HUGHES HUBBARD & REED LLP
       October 22, 2013


                                      ___*/s/ Daniel S. Lubell*_____
                                      Daniel S. Lubell
                                      Eleni D. Theodosiou-Pisanelli
                                      One Battery Park Plaza
                                      New York, New York 10004
                                      Telephone:  (212) 837-6000
                                      Facsimile:   (212) 422-4726

                                      *Counsel to PricewaterhouseCoopers Inc.,*
                                      *Receiver for the Debtors*

# EXHIBIT A
# (Statement of Verification)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| | Chapter 15 |
| FLETCHER LEISURE GROUP LTD., | |
| | Case No. 13-_____ (___) |
| Debtor in a Foreign Proceeding. | |
| In re | |
| | Chapter 15 |
| FLETCHER LEISURE GROUP INC. / LE GROUPE DE LOISIRS FLETCHER INC., | |
| | Case No. 13-_____ (___) |
| Debtor in a Foreign Proceeding. | |
| In re | |
| | Chapter 15 |
| 9266-4382 QUÉBEC INC., | |
| | Case No. 13-_____ (___) |
| Debtor in a Foreign Proceeding. | |

<u>**STATEMENT OF VERIFICATION**</u>

Pursuant to 28 U.S.C. § 1746, Bernard Brunet declares as follows:

       I am a Senior Vice President and an authorized agent of PricewaterhouseCoopers

Inc., which was appointed as Receiver of 9266-4382 Québec Inc., Fletcher Leisure Group

Inc./Le Groupe de Loisirs Fletcher Inc., and Fletcher Leisure Group Ltd. by the Superior Court

(Commercial Division), District of Montreal, Province of Québec on October 22, 2013.  I have

full authority to verify the foregoing *Verified Chapter 15 Petition for Recognition of Foreign*

*Proceeding and Related Relief* (the "<u>Verified Petition</u>"). I have read the foregoing Verified

Petition, and am informed and do believe that the allegations contained therein are true and

accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: Montreal, Canada
          October 22, 2013

_____
Name:  Bernard Brunet

Title:   Senior Vice President
          PricewaterhouseCoopers Inc.


2

# EXHIBIT B
## (Receivership Order)

# SUPERIOR COURT

### (Commercial Division)

CANADA
PROVINCE OF QUÉBEC
DISTRICT OF MONTRÉAL

DATE: October 22, 2013

---

PRESIDING :    Me    Me Pierre Pellerin, registraire    , REGISTRAR

---

IN THE MATTER OF THE RECEIVERSHIP OF:

FLETCHER LEISURE GROUP INC./LE GROUPE DE LOISIRS FLETCHER INC.


-and-

9266-4382 QUÉBEC INC.


-and-

FLETCHER LEISURE GROUP LTD.

    No.: 500-11-045522-132

    Debtors

-and-

SALUS CAPITAL PARTNERS, LLC

    Petitioner

-and-

PRICEWATERHOUSECOOPERS INC.

    Receiver

- 2 -

## ORDER APPOINTING A RECEIVER
### (Section 243 of the *Bankruptcy and Insolvency Act*)

[1]    **ON READING** the Petitioner's Motion to Appoint a Receiver (the "**Motion**") pursuant to Article 243 of the *Bankruptcy and Insolvency Act* (the "**BIA**"), the affidavit and the exhibits in support thereof;

[2]    **CONSIDERING** the service of the Motion;

[3]    **CONSIDERING** the submissions of Petitioner's attorneys;

[4]    **CONSIDERING** that Petitioner sent the Debtors a notice pursuant to the terms of Article 244 of the BIA;

[5]    **CONSIDERING** that it is appropriate to appoint a receiver to the Property (such as defined herein) of the Debtors;

**WHEREFORE THE COURT:**

[6]    **GRANTS** the Motion;

## SERVICE

[7]    **ORDERS** that any prior delay for the presentation of this Motion is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof;

## APPOINTMENT

[8]    **APPOINTS** PricewaterhouseCoopers Inc., trustee, to act as receiver (the "**Receiver**") to the Property (as defined herein) of Fletcher Leisure Group Inc./Le Groupe de Loisirs Fletcher Inc., 9266-4382 Québec Inc. and Fletcher Leisure Group Ltd. (the "**Debtors**") until one of the following events comes to pass:

   (a)    the filing with the Court of a certificate by the Receiver confirming that the sale of substantially all of the Debtors' assets is completed and distribution of the proceeds has been made; or

   (b)    the issuance of any order by the Court terminating the mandate of the Receiver;

[9]    **DECLARES** that the order (the "**Order**") and its effects shall survive the filing by the Debtors of a notice of intention to make a proposal or of a proposal pursuant to the terms of the BIA, the issuance of an initial order in regard of the Debtors pursuant to the terms of the *Companies Creditors Arrangements Act* (the "**CCAA**") or the bankruptcy of the Debtors, unless the Court orders otherwise;

## RECEIVER'S POWERS

[10]    **AUTHORIZES** the Receiver to exercise the following powers:

### 10.1    Powers related to the possession of the Property

**AUTHORIZES** the Receiver to take possession of the Debtors' Property described herein (the "**Property**") and to exercise the following powers listed hereinafter in the place and stead of the Debtors in respect of the Property:

(a)    The universality of all of each Debtors' movable property, corporeal and incorporeal, present and future, of any nature whatsoever and wheresoever situate, the whole including, without limitation, the universalities of present and future property of each of the Debtors;

### 10.2    Powers related to the preservation of the Property

(b)    all the powers necessary for the preservation and for the protection of the Property;

(c)    all the powers necessary to control the Property, the place of business and the premises occupied by the Debtors;

(d)    all the powers necessary to grant the Receiver access, at all times, to the place of business and to the premises of the Debtors, to the Property, and to change the locks granting access to such premises and places of business of the Debtors;

(e)    all the powers necessary to grant the Receiver access to all the accounting records of the Debtors, as well as to any document, contract, register of any nature or kind whatsoever, wherever they may be situated and regardless of the medium on which they may be recorded (the "**Records**"), as well as the powers necessary to make copies of all the Records necessary or useful to the execution of the Receiver's functions;

(f)    all the powers necessary to undertake an analysis of the Debtors' Records;

- 4 -

## 10.3  Powers related to the Debtors' operations

(g)    manage, operate, and carry on, all or any part of the Debtors' operations, including the powers to enter into any agreements, incur any obligations in the ordinary course of business, cease to carry on all or any part of the business, or cease to perform any contracts of the Debtors;

(h)    subject to paragraphs [21], [22] and [23] hereof, all the powers necessary to control the Debtors' receipts and disbursements;

(i)    all the powers necessary to collect all the accounts receivable and all the other claims of the Debtors and to transact in respect of same, as well as to sign any document for this purpose;

(j)    all the powers necessary to i) file a voluntary assignment in bankruptcy, ii) file a notice of intention or iii) seek creditor protection under the CCAA in respect of the Debtors, the whole subject to the prior written consent of Petitioner;

(k)    all the powers necessary to engage or to continue the engagement of consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons (including Kurt Salmon Capital Advisors, Inc., as investment banker ("**Kurt Salmon**") and Richter Advisory Group Inc., as financial advisor ("**Richter**")) from time to time and on terms which provide monetary compensation that is no more favourable than the existing terms set out in the respective engagement letter(s) (if any), including on a temporary basis, to assist with the exercise of the Receiver's powers and duties relating to the Debtors' operations or otherwise, including without limitation those conferred by this Order;

## 10.4  Powers related to the disposition or sale of the Property

(l)    all the powers necessary to carry out the sale or the disposition of the Property in the ordinary course of business of the Debtors, to transact in that regard, and to sign any document or any contract required or useful for these purposes or meant to give effect to any such sale or disposition;

(m)    all the powers necessary to interest or solicit one or several potential buyers of all or any part of the Property, including, without limitation, the right to carry out a public call for tenders or private solicitations in order to dispose of the Property;

(n)    all the powers necessary to engage or to continue the engagement of consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons (including Kurt Salmon and Richter) from time to time and on terms which provide monetary compensation that is no

- 5 -

more favourable than the existing terms set out in the respective engagement letter(s) (if any), including on a temporary basis, to assist with the exercise of the Receiver's powers and duties relating to the disposition of the Property or otherwise, including without limitation those conferred by this Order;

(o)    to apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers thereof, free and clear of any liens or encumbrances affecting such Property;

(p)    to exercise any shareholder's rights which the Debtors may have, inter alia, with respect to the share certificates of Fletcher Leisure Group Ltd. and Sunice Europe Limited;

(q)    to act as foreign representative in a petition under Chapter 15 of the US Bankruptcy Code to recognize these proceedings and any order issued by this Court;

[11]    **ORDERS** the Receiver to petition the Court for authorization to sell all or any part of the Debtors' Property outside the ordinary course of business, upon finding a purchaser and pursuant to conditions it deems reasonable in the circumstances;

[12]    **GRANTS** the Receiver all the powers necessary to initiate, prosecute and continue the prosecution of any and all proceedings it considers appropriate, including for the purpose of Sections 34 and 249 of the BIA, within the performance of its duties regarding the Property;

[13]    **AUTHORIZES** the Receiver to retain the services of any lawyer, or of any person or business in order to appropriately fulfil its functions;

[14]    **DECLARES** that the Receiver may provide creditors and other relevant stakeholders with information in response to requests made by them in writing. A copy of such requests must be sent to the Petitioner's attorney. Where the Receiver has been advised by the Petitioner that information is confidential, proprietary or competitive, the Receiver shall not provide such information to any person without the consent of the Petitioner unless otherwise directed by this Court;

## DEBTOR'S DUTIES

[15]    **ORDERS** the Debtors, its directors, officers, employees, agents and representatives to forthwith provide the Receiver with access to the Property, to the places of business and to the premises of the Debtors, as well as to the Records;

- 6 -

[16]   **ORDERS** the Debtors, its directors, officers, employees, agents and representatives to cooperate with the Receiver in the exercise of the powers that are granted pursuant to the terms of the Order;

[17]   **ORDERS** the Debtors not to dispose, alienate, encumber or otherwise transact in any manner whatsoever, with regard to the Property, other than in the ordinary course of business or with the authorization of the Receiver;

## NON-INTERFERENCE WITH THE RECEIVER, THE DEBTORS AND THE PROPERTY

[18]   **ORDERS** that subject to any other order rendered by the Court, which may only be rendered after a prior notice has been duly sent to the Receiver and to the Petitioner, no proceeding, seizure, revendication, or any other enforcement process shall be commenced or enforced against the Property, save and except for any enforcement by the Petitioner against the Property.

[19]   **ORDERS** that no person shall interrupt, modify, terminate or fail to execute its obligations pursuant to any contract, agreement, license or permit entered into with the Debtors without the prior consent of the Receiver or without the authorization of the Court;

## CONTINUATION OF SERVICES

[20]   **ORDERS** that any person having an oral or written agreement with the Debtors, as well as any supplier of goods or services to the Debtors is hereby restrained until further order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services, as may be required by the Receiver and that the Receiver shall be authorized to continue use of the Debtors' current premises, telephone numbers, facsimile numbers, internet addresses, domain names and other services, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Receiver, in accordance with the normal payment practices of the Debtors or such other practices as may be agreed upon by the supplier or service provider and the Receiver, or as may be ordered by this Court;

## CASH MANAGEMENT SYSTEM

[21]   **ORDERS** that the Receiver shall be authorized but not required to pay the payables of the Debtors, and shall continue to utilize, in the name of and on behalf of the Debtors or any one of them, the Cash Management System as described in the Motion, and that any present or future bank providing the Cash Management System: (i) shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other

action taken under the Cash Management System, or as to the use or application by the Receiver of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, and (ii) shall be entitled to provide the Cash Management System without any liability to any Person other than the Receiver (acting in the name of and on behalf of the Debtors) pursuant to the terms of the documentation applicable to the Cash Management System;

[22]    **DECLARES** that the Receiver is not obligated to incur any obligations without having received from the Petitioner prior funding or other payment assurance satisfactory to the Receiver in accordance with the Cash Management System, as defined and described in the Motion;

## RECEIVER TO HOLD FUNDS

[23]    **ORDERS** all funds, monies, cheques, instruments, and other forms of payments received or collected by the Receiver from and after the making of this Order from any source whatsoever, including without limitation the collection of any accounts receivable in whole or in part, whether in existence on the date of this Order or hereafter coming into existence, shall be deposited into the Debtors' bank accounts in accordance with the Cash Management System other than any proceeds arising from the sale of the Debtors' business and assets in connection with the Sale Process (defined below) which sale proceeds shall be deposited into one or more new accounts to be opened by the Receiver (the "**Post Receivership Accounts**") and the monies standing to the credit of such Post Receivership Accounts from time to time, shall be held by the Receiver to be paid in accordance with the terms of this Order or any further Order of this Court;

## SALE PROCESS

[24]    **APPROVES and AUTHORIZES** the Receiver to continue and complete the sale process as further described in the Motion (the "**Sale Process**") including by engaging Kurt Salmon to assist in connection therewith, with such engagement to be in accordance with the terms of this Order;

## EMPLOYEES

[25]    **AUTHORIZES** the Receiver to continue to engage the services of the Debtors' employees until the Receiver, acting for and on behalf of the Debtors, terminates the employment of such employees, including those subject to temporary layoff. The Receiver shall not be liable for any employee related liabilities, including any successor-employer liabilities as provided for in sections 14.06(1.2) of the *BIA* other than such amounts as the Receiver may specifically agree in writing to pay, or in respect of its obligations under sections 81.4(5) and 81.6(3) of the *BIA* or under the *Wage Earner Protection Program Act*;

- 8 -

## PROTECTION OF PERSONAL INFORMATION

[26]    **DECLARES** that pursuant to clause 7(3)(c) of the *Canada Personal Information Protection and Electronic Documents Act*, the Receiver shall disclose personal information on identifiable individuals, which information it has in its possession or under its responsibility, to interested parties or to investors, financiers, prospective purchasers or potential strategic partners, as well as to their advisors, but only to the extent desirable or required, and only upon condition that the persons to whom such personal information is disclosed shall undertake to maintain and protect the privacy of such information and limit the use of such information pursuant to confidentiality agreements entered into with the Receiver or the Debtors in connection with the Sales Process;

## LIMITATION OF LIABILITY

[27]    **DECLARES** that subject to the powers granted to the Receiver pursuant to the terms of paragraph 10 of the Order, nothing herein contained shall require the Receiver to occupy or to take control, or to otherwise manage all or any part of the Property. The Receiver shall not, as a result of this Order, be deemed to be in possession of any of the Property within the meaning of environmental legislation, the whole pursuant to the terms of the *BIA*;

[28]    **DECLARES** that the powers of the Receiver shall be exercised pursuant to its sole discretion and judgment;

[29]    **DECLARES** that section 215 of the *BIA* applies *mutatis mutandis*, and hence that no action lies against the Receiver by reason of its appointment or the execution of the powers granted by the Court, except by leave of the Court. The entities related to the Receiver or belonging to the same group as the Receiver shall benefit from the protection arising under the present paragraph;

## FEES

[30]    **DECLARES** that as security for the professional fees and disbursements incurred in relation to these proceedings, both before and after the date of the Order, a charge and security over the Property is hereby constituted in favour of the Receiver, of the Receiver's attorneys referred to in paragraph [13] and other advisors referred to in paragraphs 10.3(k) and 10.4(n) herein, to the extent of the aggregate amount of $250,000 (the "**Administration Charge**");

[31]    **DECLARES** that the Administration Charge shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, charges, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property charged by such Encumbrances;

- 9 -

[32]  **DECLARES** that the Administration Charge is effective and shall charge, as of 12:01 a.m. (Montreal time) the day of the Order (the "**Effective Time**"), all the Debtors' Property present and future;

[33]  **DECLARES** that notwithstanding: (i) these proceedings and any declaration of insolvency made herein, (ii) any petition for a receiver order filed pursuant to the *BIA* in respect of the Petitioner and any receiving order granting such petition or any assignment in bankruptcy made or deemed to be made in respect of the Petitioner and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by the Receiver pursuant to the Order and the granting of the Administration Charges do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions or conduct meriting a recourse for abuse under an applicable law, and shall be valid and enforceable as against any person, including any trustee in bankruptcy, and any receiver to the Property of the Debtors;

[34]  **AUTHORIZES** the Receiver to deduct advances for the payment of its fees and disbursements, those of its legal counsels referred to in paragraph [13] and other advisors referred to in paragraphs 10.3(k) and 10.4(n) herein, with the consent of the Petitioner, the whole subject to taxation in conformity with the BIA, if applicable.

## FUNDING OF THE RECEIVERSHIP

[35]  **AUTHORIZES** the Receiver, in the name of and on behalf of the Debtor Fletcher Leisure Group Inc., to be at liberty and empowered to borrow from the Petitioner, by way of written request (in a form and manner satisfactory to the Petitioner) to the Petitioner from time to time such monies as the Receiver may consider necessary or desirable (including to fund the Receiver's reasonable fees and disbursements), with such borrowings to constitute indebtedness of the Borrower to the Petitioner under the Credit Agreement (Exhibit R-5) and to accrue interest at the rates provided for in the Credit Agreement, it being understood that such borrowings shall be funded at the sole discretion of the Petitioner and shall be repaid in full upon demand. Such borrowings and any interest thereon shall be secured by the existing security granted by the Debtors in favour of the Petitioner (Exhibit R-7);

## GENERAL

[36]  **DECLARES** that the Order, the Motion and the affidavit do not, in and of themselves, constitute a default or failure to comply by the Debtors under any statute, regulation, license, permit, contract, permission, covenant, agreement, undertaking or any other written document or requirement;

- 10 -

[37]    **DECLARES** that the Receiver is at liberty to serve any notice, circular or any other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to persons or other appropriate parties at their respective given address as last shown in the Records; the documents served in this manner shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three (3) business days after mailing if delivered by ordinary mail;

[38]    **DECLARES** that the Receiver may serve any court materials in these proceedings on all represented parties, by emailing a PDF or other electronic copy of such materials to counsels' email addresses, provided that the Receiver shall deliver "hard copies" of such materials upon request to any party as soon as practicable thereafter;

[39]    **DECLARES** that any party interested in these proceedings may serve any court material in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses, provided that such party shall deliver a "hard copy" on paper of such PDF or electronic materials to the Debtors' and the Receiver's counsel and to any other party who may request such delivery;

[40]    **DECLARES** that, unless otherwise provided herein, ordered by this Court, or provided by the BIA, no document, order or other material need be served on any person in respect of these proceedings, unless such person has served a notice of appearance on the solicitors for the Debtors and the Receiver and has filed such notice with the Court;

[41]    **DECLARES** that any interested Person may apply to this Court to vary or rescind the Order or seek other relief upon five (5) days' notice to the Receiver, the Petitioner and any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order;

[42]    **ORDERS** that the Second Forbearance Agreement (as defined in the Motion) and the Kurt Salmon Engagement Letter (as defined in the Motion), filed respectively as Exhibits R-13 and R-16, be kept confidential and under seal in the office of counsel for the Petitioners until, as the case may be, further order of this Court. However, all creditors of the Petitioners shall be entitled to obtain disclosure of the said Exhibits upon written request and provided they have signed a confidentiality agreement in standard form;

[43]    **DECLARES** that the present Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada;

[44]    **DECLARES** that the centre of main interest of the Debtors is in Québec;

- 11 -

[45]    **DECLARES** that the Receiver shall be authorized to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America, the United Kingdom or elsewhere, for orders which aid and complement the Order and any subsequent orders of this Court and, without limitation to the foregoing, an order under Chapter 15 of the *U.S. Bankruptcy Code*, for which the Receiver shall be the foreign representative of the Debtors. All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Receiver as may be deemed necessary or appropriate for that purpose;

[46]    **REQUESTS** the aid and recognition of any Court or administrative body in any Province of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the United States of America or the United Kingdom and any court or administrative body elsewhere, to act in aid of and to be complementary to this Court in carrying out the terms of the Order;

[47]    **ORDERS** the provisional execution of the present Order notwithstanding any appeal and without the requirement to provide any security or provision for costs whatsoever;

_____

, REGISTRAR

8389713.15

COPIE CONFORME

_____
Officier judiciaire

# SUPERIOR COURT

## (Commercial Division)

CANADA
PROVINCE OF QUÉBEC
DISTRICT OF MONTRÉAL

DATE: October 22, 2013

_____

PRESIDING :    Me ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ , REGISTRAR

_____

IN THE MATTER OF THE RECEIVERSHIP OF:

**FLETCHER LEISURE GROUP INC./LE GROUPE DE LOISIRS FLETCHER INC.**

    No.: 500-11-045520-136

-and-

**9266-4382 QUÉBEC INC.**


-and-

**FLETCHER LEISURE GROUP LTD.**


    Debtors

-and-

**SALUS CAPITAL PARTNERS, LLC**

    Petitioner

-and-

**PRICEWATERHOUSECOOPERS INC.**

    Receiver

- 2 -

---

## ORDER APPOINTING A RECEIVER
### (Section 243 of the *Bankruptcy and Insolvency Act*)

---

[1]   **ON READING** the Petitioner's Motion to Appoint a Receiver (the "**Motion**") pursuant to Article 243 of the *Bankruptcy and Insolvency Act* (the "**BIA**"), the affidavit and the exhibits in support thereof;

[2]   **CONSIDERING** the service of the Motion;

[3]   **CONSIDERING** the submissions of Petitioner's attorneys;

[4]   **CONSIDERING** that Petitioner sent the Debtors a notice pursuant to the terms of Article 244 of the BIA;

[5]   **CONSIDERING** that it is appropriate to appoint a receiver to the Property (such as defined herein) of the Debtors;

**WHEREFORE THE COURT:**

[6]   **GRANTS** the Motion;

**SERVICE**

[7]   **ORDERS** that any prior delay for the presentation of this Motion is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof;

**APPOINTMENT**

[8]   **APPOINTS** PricewaterhouseCoopers Inc., trustee, to act as receiver (the "**Receiver**") to the Property (as defined herein) of Fletcher Leisure Group Inc./Le Groupe de Loisirs Fletcher Inc., 9266-4382 Québec Inc. and Fletcher Leisure Group Ltd. (the "**Debtors**") until one of the following events comes to pass:

   (a)   the filing with the Court of a certificate by the Receiver confirming that the sale of substantially all of the Debtors' assets is completed and distribution of the proceeds has been made; or

   (b)   the issuance of any order by the Court terminating the mandate of the Receiver;

- 3 -

[9]    **DECLARES** that the order (the "**Order**") and its effects shall survive the filing by the Debtors of a notice of intention to make a proposal or of a proposal pursuant to the terms of the BIA, the issuance of an initial order in regard of the Debtors pursuant to the terms of the *Companies Creditors Arrangements Act* (the "**CCAA**") or the bankruptcy of the Debtors, unless the Court orders otherwise;

## RECEIVER'S POWERS

[10]    **AUTHORIZES** the Receiver to exercise the following powers:

### 10.1    Powers related to the possession of the Property

**AUTHORIZES** the Receiver to take possession of the Debtors' Property described herein (the "**Property**") and to exercise the following powers listed hereinafter in the place and stead of the Debtors in respect of the Property:

(a)    The universality of all of each Debtors' movable property, corporeal and incorporeal, present and future, of any nature whatsoever and wheresoever situate, the whole including, without limitation, the universalities of present and future property of each of the Debtors;

### 10.2    Powers related to the preservation of the Property

(b)    all the powers necessary for the preservation and for the protection of the Property;

(c)    all the powers necessary to control the Property, the place of business and the premises occupied by the Debtors;

(d)    all the powers necessary to grant the Receiver access, at all times, to the place of business and to the premises of the Debtors, to the Property, and to change the locks granting access to such premises and places of business of the Debtors;

(e)    all the powers necessary to grant the Receiver access to all the accounting records of the Debtors, as well as to any document, contract, register of any nature or kind whatsoever, wherever they may be situated and regardless of the medium on which they may be recorded (the "**Records**"), as well as the powers necessary to make copies of all the Records necessary or useful to the execution of the Receiver's functions;

(f)    all the powers necessary to undertake an analysis of the Debtors' Records;

- 4 -

## 10.3   Powers related to the Debtors' operations

(g)     manage, operate, and carry on, all or any part of the Debtors' operations, including the powers to enter into any agreements, incur any obligations in the ordinary course of business, cease to carry on all or any part of the business, or cease to perform any contracts of the Debtors;

(h)     subject to paragraphs [21], [22] and [23] hereof, all the powers necessary to control the Debtors' receipts and disbursements;

(i)     all the powers necessary to collect all the accounts receivable and all the other claims of the Debtors and to transact in respect of same, as well as to sign any document for this purpose;

(j)     all the powers necessary to i) file a voluntary assignment in bankruptcy, ii) file a notice of intention or iii) seek creditor protection under the CCAA in respect of the Debtors, the whole subject to the prior written consent of Petitioner;

(k)     all the powers necessary to engage or to continue the engagement of consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons (including Kurt Salmon Capital Advisors, Inc., as investment banker ("**Kurt Salmon**") and Richter Advisory Group Inc., as financial advisor ("**Richter**")) from time to time and on terms which provide monetary compensation that is no more favourable than the existing terms set out in the respective engagement letter(s) (if any), including on a temporary basis, to assist with the exercise of the Receiver's powers and duties relating to the Debtors' operations or otherwise, including without limitation those conferred by this Order;

## 10.4   Powers related to the disposition or sale of the Property

(l)     all the powers necessary to carry out the sale or the disposition of the Property in the ordinary course of business of the Debtors, to transact in that regard, and to sign any document or any contract required or useful for these purposes or meant to give effect to any such sale or disposition;

(m)     all the powers necessary to interest or solicit one or several potential buyers of all or any part of the Property, including, without limitation, the right to carry out a public call for tenders or private solicitations in order to dispose of the Property;

(n)     all the powers necessary to engage or to continue the engagement of consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons (including Kurt Salmon and Richter) from time to time and on terms which provide monetary compensation that is no

- 5 -

more favourable than the existing terms set out in the respective engagement letter(s) (if any), including on a temporary basis, to assist with the exercise of the Receiver's powers and duties relating to the disposition of the Property or otherwise, including without limitation those conferred by this Order;

(o)     to apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers thereof, free and clear of any liens or encumbrances affecting such Property;

(p)     to exercise any shareholder's rights which the Debtors may have, inter alia, with respect to the share certificates of Fletcher Leisure Group Ltd. and Sunice Europe Limited;

(q)     to act as foreign representative in a petition under Chapter 15 of the US Bankruptcy Code to recognize these proceedings and any order issued by this Court;

[11]    **ORDERS** the Receiver to petition the Court for authorization to sell all or any part of the Debtors' Property outside the ordinary course of business, upon finding a purchaser and pursuant to conditions it deems reasonable in the circumstances;

[12]    **GRANTS** the Receiver all the powers necessary to initiate, prosecute and continue the prosecution of any and all proceedings it considers appropriate, including for the purpose of Sections 34 and 249 of the BIA, within the performance of its duties regarding the Property;

[13]    **AUTHORIZES** the Receiver to retain the services of any lawyer, or of any person or business in order to appropriately fulfil its functions;

[14]    **DECLARES** that the Receiver may provide creditors and other relevant stakeholders with information in response to requests made by them in writing. A copy of such requests must be sent to the Petitioner's attorney. Where the Receiver has been advised by the Petitioner that information is confidential, proprietary or competitive, the Receiver shall not provide such information to any person without the consent of the Petitioner unless otherwise directed by this Court;

## DEBTOR'S DUTIES

[15]    **ORDERS** the Debtors, its directors, officers, employees, agents and representatives to forthwith provide the Receiver with access to the Property, to the places of business and to the premises of the Debtors, as well as to the Records;

- 6 -

[16]   **ORDERS** the Debtors, its directors, officers, employees, agents and representatives to cooperate with the Receiver in the exercise of the powers that are granted pursuant to the terms of the Order;

[17]   **ORDERS** the Debtors not to dispose, alienate, encumber or otherwise transact in any manner whatsoever, with regard to the Property, other than in the ordinary course of business or with the authorization of the Receiver;

## NON-INTERFERENCE WITH THE RECEIVER, THE DEBTORS AND THE PROPERTY

[18]   **ORDERS** that subject to any other order rendered by the Court, which may only be rendered after a prior notice has been duly sent to the Receiver and to the Petitioner, no proceeding, seizure, revendication, or any other enforcement process shall be commenced or enforced against the Property, save and except for any enforcement by the Petitioner against the Property.

[19]   **ORDERS** that no person shall interrupt, modify, terminate or fail to execute its obligations pursuant to any contract, agreement, license or permit entered into with the Debtors without the prior consent of the Receiver or without the authorization of the Court;

## CONTINUATION OF SERVICES

[20]   **ORDERS** that any person having an oral or written agreement with the Debtors, as well as any supplier of goods or services to the Debtors is hereby restrained until further order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services, as may be required by the Receiver and that the Receiver shall be authorized to continue use of the Debtors' current premises, telephone numbers, facsimile numbers, internet addresses, domain names and other services, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Receiver, in accordance with the normal payment practices of the Debtors or such other practices as may be agreed upon by the supplier or service provider and the Receiver, or as may be ordered by this Court;

## CASH MANAGEMENT SYSTEM

[21]   **ORDERS** that the Receiver shall be authorized but not required to pay the payables of the Debtors, and shall continue to utilize, in the name of and on behalf of the Debtors or any one of them, the Cash Management System as described in the Motion, and that any present or future bank providing the Cash Management System: (i) shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other

- 7 -

action taken under the Cash Management System, or as to the use or application by the Receiver of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, and (ii) shall be entitled to provide the Cash Management System without any liability to any Person other than the Receiver (acting in the name of and on behalf of the Debtors) pursuant to the terms of the documentation applicable to the Cash Management System;

[22] **DECLARES** that the Receiver is not obligated to incur any obligations without having received from the Petitioner prior funding or other payment assurance satisfactory to the Receiver in accordance with the Cash Management System, as defined and described in the Motion;

## RECEIVER TO HOLD FUNDS

[23] **ORDERS** all funds, monies, cheques, instruments, and other forms of payments received or collected by the Receiver from and after the making of this Order from any source whatsoever, including without limitation the collection of any accounts receivable in whole or in part, whether in existence on the date of this Order or hereafter coming into existence, shall be deposited into the Debtors' bank accounts in accordance with the Cash Management System other than any proceeds arising from the sale of the Debtors' business and assets in connection with the Sale Process (defined below) which sale proceeds shall be deposited into one or more new accounts to be opened by the Receiver (the "**Post Receivership Accounts**") and the monies standing to the credit of such Post Receivership Accounts from time to time, shall be held by the Receiver to be paid in accordance with the terms of this Order or any further Order of this Court;

## SALE PROCESS

[24] **APPROVES and AUTHORIZES** the Receiver to continue and complete the sale process as further described in the Motion (the "**Sale Process**") including by engaging Kurt Salmon to assist in connection therewith, with such engagement to be in accordance with the terms of this Order;

## EMPLOYEES

[25] **AUTHORIZES** the Receiver to continue to engage the services of the Debtors' employees until the Receiver, acting for and on behalf of the Debtors, terminates the employment of such employees, including those subject to temporary layoff. The Receiver shall not be liable for any employee related liabilities, including any successor-employer liabilities as provided for in sections 14.06(1.2) of the *BIA* other than such amounts as the Receiver may specifically agree in writing to pay, or in respect of its obligations under sections 81.4(5) and 81.6(3) of the *BIA* or under the *Wage Earner Protection Program Act*;

- 8 -

## PROTECTION OF PERSONAL INFORMATION

[26]    **DECLARES** that pursuant to clause 7(3)(c) of the *Canada Personal Information Protection and Electronic Documents Act*, the Receiver shall disclose personal information on identifiable individuals, which information it has in its possession or under its responsibility, to interested parties or to investors, financiers, prospective purchasers or potential strategic partners, as well as to their advisors, but only to the extent desirable or required, and only upon condition that the persons to whom such personal information is disclosed shall undertake to maintain and protect the privacy of such information and limit the use of such information pursuant to confidentiality agreements entered into with the Receiver or the Debtors in connection with the Sales Process;

## LIMITATION OF LIABILITY

[27]    **DECLARES** that subject to the powers granted to the Receiver pursuant to the terms of paragraph 10 of the Order, nothing herein contained shall require the Receiver to occupy or to take control, or to otherwise manage all or any part of the Property. The Receiver shall not, as a result of this Order, be deemed to be in possession of any of the Property within the meaning of environmental legislation, the whole pursuant to the terms of the *BIA*;

[28]    **DECLARES** that the powers of the Receiver shall be exercised pursuant to its sole discretion and judgment;

[29]    **DECLARES** that section 215 of the *BIA* applies *mutatis mutandis*, and hence that no action lies against the Receiver by reason of its appointment or the execution of the powers granted by the Court, except by leave of the Court. The entities related to the Receiver or belonging to the same group as the Receiver shall benefit from the protection arising under the present paragraph;

## FEES

[30]    **DECLARES** that as security for the professional fees and disbursements incurred in relation to these proceedings, both before and after the date of the Order, a charge and security over the Property is hereby constituted in favour of the Receiver, of the Receiver's attorneys referred to in paragraph [13] and other advisors referred to in paragraphs 10.3(k) and 10.4(n) herein, to the extent of the aggregate amount of $250,000 (the "**Administration Charge**");

[31]    **DECLARES** that the Administration Charge shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, charges, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property charged by such Encumbrances;

- 9 -

[32]   **DECLARES** that the Administration Charge is effective and shall charge, as of 12:01 a.m. (Montreal time) the day of the Order (the "**Effective Time**"), all the Debtors' Property present and future;

[33]   **DECLARES** that notwithstanding: (i) these proceedings and any declaration of insolvency made herein, (ii) any petition for a receiver order filed pursuant to the *BIA* in respect of the Petitioner and any receiving order granting such petition or any assignment in bankruptcy made or deemed to be made in respect of the Petitioner and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by the Receiver pursuant to the Order and the granting of the Administration Charges do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions or conduct meriting a recourse for abuse under an applicable law, and shall be valid and enforceable as against any person, including any trustee in bankruptcy, and any receiver to the Property of the Debtors;

[34]   **AUTHORIZES** the Receiver to deduct advances for the payment of its fees and disbursements, those of its legal counsels referred to in paragraph [13] and other advisors referred to in paragraphs 10.3(k) and 10.4(n) herein, with the consent of the Petitioner, the whole subject to taxation in conformity with the BIA, if applicable.

## FUNDING OF THE RECEIVERSHIP

[35]   **AUTHORIZES** the Receiver, in the name of and on behalf of the Debtor Fletcher Leisure Group Inc., to be at liberty and empowered to borrow from the Petitioner, by way of written request (in a form and manner satisfactory to the Petitioner) to the Petitioner from time to time such monies as the Receiver may consider necessary or desirable (including to fund the Receiver's reasonable fees and disbursements), with such borrowings to constitute indebtedness of the Borrower to the Petitioner under the Credit Agreement (Exhibit R-5) and to accrue interest at the rates provided for in the Credit Agreement, it being understood that such borrowings shall be funded at the sole discretion of the Petitioner and shall be repaid in full upon demand. Such borrowings and any interest thereon shall be secured by the existing security granted by the Debtors in favour of the Petitioner (Exhibit R-7);

## GENERAL

[36]   **DECLARES** that the Order, the Motion and the affidavit do not, in and of themselves, constitute a default or failure to comply by the Debtors under any statute, regulation, license, permit, contract, permission, covenant, agreement, undertaking or any other written document or requirement;

- 10 -

[37]    DECLARES that the Receiver is at liberty to serve any notice, circular or any other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to persons or other appropriate parties at their respective given address as last shown in the Records; the documents served in this manner shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three (3) business days after mailing if delivered by ordinary mail;

[38]    DECLARES that the Receiver may serve any court materials in these proceedings on all represented parties, by emailing a PDF or other electronic copy of such materials to counsels' email addresses, provided that the Receiver shall deliver "hard copies" of such materials upon request to any party as soon as practicable thereafter;

[39]    DECLARES that any party interested in these proceedings may serve any court material in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses, provided that such party shall deliver a "hard copy" on paper of such PDF or electronic materials to the Debtors' and the Receiver's counsel and to any other party who may request such delivery;

[40]    DECLARES that, unless otherwise provided herein, ordered by this Court, or provided by the BIA, no document, order or other material need be served on any person in respect of these proceedings, unless such person has served a notice of appearance on the solicitors for the Debtors and the Receiver and has filed such notice with the Court;

[41]    DECLARES that any interested Person may apply to this Court to vary or rescind the Order or seek other relief upon five (5) days' notice to the Receiver, the Petitioner and any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order;

[42]    ORDERS that the Second Forbearance Agreement (as defined in the Motion) and the Kurt Salmon Engagement Letter (as defined in the Motion), filed respectively as Exhibits R-13 and R-16, be kept confidential and under seal in the office of counsel for the Petitioners until, as the case may be, further order of this Court. However, all creditors of the Petitioners shall be entitled to obtain disclosure of the said Exhibits upon written request and provided they have signed a confidentiality agreement in standard form;

[43]    DECLARES that the present Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada;

[44]    DECLARES that the centre of main interest of the Debtors is in Québec;

- 11 -

[45]    **DECLARES** that the Receiver shall be authorized to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America, the United Kingdom or elsewhere, for orders which aid and complement the Order and any subsequent orders of this Court and, without limitation to the foregoing, an order under Chapter 15 of the *U.S. Bankruptcy Code*, for which the Receiver shall be the foreign representative of the Debtors. All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Receiver as may be deemed necessary or appropriate for that purpose;

[46]    **REQUESTS** the aid and recognition of any Court or administrative body in any Province of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the United States of America or the United Kingdom and any court or administrative body elsewhere, to act in aid of and to be complementary to this Court in carrying out the terms of the Order;

[47]    **ORDERS** the provisional execution of the present Order notwithstanding any appeal and without the requirement to provide any security or provision for costs whatsoever;

, REGISTRAR

8389713.15

COPIE CONFORME

Greffier adjoint

# SUPERIOR COURT

### (Commercial Division)

CANADA
PROVINCE OF QUÉBEC
DISTRICT OF MONTRÉAL

DATE: October 22, 2013

PRESIDING :      Me      ~~Me Pierre Pellerin, registraire~~      , REGISTRAR

IN THE MATTER OF THE RECEIVERSHIP OF:

FLETCHER LEISURE GROUP INC./LE GROUPE DE LOISIRS FLETCHER INC.

-and-

9266-4382 QUÉBEC INC.

    No.: 500-11-045521-134

-and-

FLETCHER LEISURE GROUP LTD.


    Debtors

-and-

SALUS CAPITAL PARTNERS, LLC

    Petitioner

-and-

PRICEWATERHOUSECOOPERS INC.

    Receiver

- 2 -

## ORDER APPOINTING A RECEIVER
### (Section 243 of the *Bankruptcy and Insolvency Act*)

[1]   **ON READING** the Petitioner's Motion to Appoint a Receiver (the "**Motion**") pursuant to Article 243 of the *Bankruptcy and Insolvency Act* (the "**BIA**"), the affidavit and the exhibits in support thereof;

[2]   **CONSIDERING** the service of the Motion;

[3]   **CONSIDERING** the submissions of Petitioner's attorneys;

[4]   **CONSIDERING** that Petitioner sent the Debtors a notice pursuant to the terms of Article 244 of the BIA;

[5]   **CONSIDERING** that it is appropriate to appoint a receiver to the Property (such as defined herein) of the Debtors;

WHEREFORE THE COURT:

[6]   **GRANTS** the Motion;

SERVICE

[7]   **ORDERS** that any prior delay for the presentation of this Motion is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof;

APPOINTMENT

[8]   **APPOINTS** PricewaterhouseCoopers Inc., trustee, to act as receiver (the "**Receiver**") to the Property (as defined herein) of Fletcher Leisure Group Inc./Le Groupe de Loisirs Fletcher Inc., 9266-4382 Québec Inc. and Fletcher Leisure Group Ltd. (the "**Debtors**") until one of the following events comes to pass:

   (a)   the filing with the Court of a certificate by the Receiver confirming that the sale of substantially all of the Debtors' assets is completed and distribution of the proceeds has been made; or

   (b)   the issuance of any order by the Court terminating the mandate of the Receiver;

- 3 -

[9]     **DECLARES** that the order (the "**Order**") and its effects shall survive the filing by the Debtors of a notice of intention to make a proposal or of a proposal pursuant to the terms of the BIA, the issuance of an initial order in regard of the Debtors pursuant to the terms of the *Companies Creditors Arrangements Act* (the "**CCAA**") or the bankruptcy of the Debtors, unless the Court orders otherwise;

## RECEIVER'S POWERS

[10]    AUTHORIZES the Receiver to exercise the following powers:

### 10.1   Powers related to the possession of the Property

**AUTHORIZES** the Receiver to take possession of the Debtors' Property described herein (the "**Property**") and to exercise the following powers listed hereinafter in the place and stead of the Debtors in respect of the Property:

(a)    The universality of all of each Debtors' movable property, corporeal and incorporeal, present and future, of any nature whatsoever and wheresoever situate, the whole including, without limitation, the universalities of present and future property of each of the Debtors;

### 10.2   Powers related to the preservation of the Property

(b)    all the powers necessary for the preservation and for the protection of the Property;

(c)    all the powers necessary to control the Property, the place of business and the premises occupied by the Debtors;

(d)    all the powers necessary to grant the Receiver access, at all times, to the place of business and to the premises of the Debtors, to the Property, and to change the locks granting access to such premises and places of business of the Debtors;

(e)    all the powers necessary to grant the Receiver access to all the accounting records of the Debtors, as well as to any document, contract, register of any nature or kind whatsoever, wherever they may be situated and regardless of the medium on which they may be recorded (the "**Records**"), as well as the powers necessary to make copies of all the Records necessary or useful to the execution of the Receiver's functions;

(f)    all the powers necessary to undertake an analysis of the Debtors' Records;

- 4 -

## 10.3   Powers related to the Debtors' operations

(g)   manage, operate, and carry on, all or any part of the Debtors' operations, including the powers to enter into any agreements, incur any obligations in the ordinary course of business, cease to carry on all or any part of the business, or cease to perform any contracts of the Debtors;

(h)   subject to paragraphs [21], [22] and [23] hereof, all the powers necessary to control the Debtors' receipts and disbursements;

(i)   all the powers necessary to collect all the accounts receivable and all the other claims of the Debtors and to transact in respect of same, as well as to sign any document for this purpose;

(j)   all the powers necessary to i) file a voluntary assignment in bankruptcy, ii) file a notice of intention or iii) seek creditor protection under the CCAA in respect of the Debtors, the whole subject to the prior written consent of Petitioner;

(k)   all the powers necessary to engage or to continue the engagement of consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons (including Kurt Salmon Capital Advisors, Inc., as investment banker ("**Kurt Salmon**") and Richter Advisory Group Inc., as financial advisor ("**Richter**")) from time to time and on terms which provide monetary compensation that is no more favourable than the existing terms set out in the respective engagement letter(s) (if any), including on a temporary basis, to assist with the exercise of the Receiver's powers and duties relating to the Debtors' operations or otherwise, including without limitation those conferred by this Order;

## 10.4   Powers related to the disposition or sale of the Property

(l)   all the powers necessary to carry out the sale or the disposition of the Property in the ordinary course of business of the Debtors, to transact in that regard, and to sign any document or any contract required or useful for these purposes or meant to give effect to any such sale or disposition;

(m)   all the powers necessary to interest or solicit one or several potential buyers of all or any part of the Property, including, without limitation, the right to carry out a public call for tenders or private solicitations in order to dispose of the Property;

(n)   all the powers necessary to engage or to continue the engagement of consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons (including Kurt Salmon and Richter) from time to time and on terms which provide monetary compensation that is no

- 5 -

more favourable than the existing terms set out in the respective engagement letter(s) (if any), including on a temporary basis, to assist with the exercise of the Receiver's powers and duties relating to the disposition of the Property or otherwise, including without limitation those conferred by this Order;

(o)     to apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers thereof, free and clear of any liens or encumbrances affecting such Property;

(p)     to exercise any shareholder's rights which the Debtors may have, inter alia, with respect to the share certificates of Fletcher Leisure Group Ltd. and Sunice Europe Limited;

(q)     to act as foreign representative in a petition under Chapter 15 of the US Bankruptcy Code to recognize these proceedings and any order issued by this Court;

[11]   **ORDERS** the Receiver to petition the Court for authorization to sell all or any part of the Debtors' Property outside the ordinary course of business, upon finding a purchaser and pursuant to conditions it deems reasonable in the circumstances;

[12]   **GRANTS** the Receiver all the powers necessary to initiate, prosecute and continue the prosecution of any and all proceedings it considers appropriate, including for the purpose of Sections 34 and 249 of the BIA, within the performance of its duties regarding the Property;

[13]   **AUTHORIZES** the Receiver to retain the services of any lawyer, or of any person or business in order to appropriately fulfil its functions;

[14]   **DECLARES** that the Receiver may provide creditors and other relevant stakeholders with information in response to requests made by them in writing. A copy of such requests must be sent to the Petitioner's attorney. Where the Receiver has been advised by the Petitioner that information is confidential, proprietary or competitive, the Receiver shall not provide such information to any person without the consent of the Petitioner unless otherwise directed by this Court;

## DEBTOR'S DUTIES

[15]   **ORDERS** the Debtors, its directors, officers, employees, agents and representatives to forthwith provide the Receiver with access to the Property, to the places of business and to the premises of the Debtors, as well as to the Records;

- 6 -

[16]    **ORDERS** the Debtors, its directors, officers, employees, agents and representatives to cooperate with the Receiver in the exercise of the powers that are granted pursuant to the terms of the Order;

[17]    **ORDERS** the Debtors not to dispose, alienate, encumber or otherwise transact in any manner whatsoever, with regard to the Property, other than in the ordinary course of business or with the authorization of the Receiver;

## NON-INTERFERENCE WITH THE RECEIVER, THE DEBTORS AND THE PROPERTY

[18]    **ORDERS** that subject to any other order rendered by the Court, which may only be rendered after a prior notice has been duly sent to the Receiver and to the Petitioner, no proceeding, seizure, revendication, or any other enforcement process shall be commenced or enforced against the Property, save and except for any enforcement by the Petitioner against the Property.

[19]    **ORDERS** that no person shall interrupt, modify, terminate or fail to execute its obligations pursuant to any contract, agreement, license or permit entered into with the Debtors without the prior consent of the Receiver or without the authorization of the Court;

## CONTINUATION OF SERVICES

[20]    **ORDERS** that any person having an oral or written agreement with the Debtors, as well as any supplier of goods or services to the Debtors is hereby restrained until further order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services, as may be required by the Receiver and that the Receiver shall be authorized to continue use of the Debtors' current premises, telephone numbers, facsimile numbers, internet addresses, domain names and other services, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Receiver, in accordance with the normal payment practices of the Debtors or such other practices as may be agreed upon by the supplier or service provider and the Receiver, or as may be ordered by this Court;

## CASH MANAGEMENT SYSTEM

[21]    **ORDERS** that the Receiver shall be authorized but not required to pay the payables of the Debtors, and shall continue to utilize, in the name of and on behalf of the Debtors or any one of them, the Cash Management System as described in the Motion, and that any present or future bank providing the Cash Management System: (i) shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other

- 7 -

action taken under the Cash Management System, or as to the use or application by the Receiver of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, and (ii) shall be entitled to provide the Cash Management System without any liability to any Person other than the Receiver (acting in the name of and on behalf of the Debtors) pursuant to the terms of the documentation applicable to the Cash Management System;

[22]   **DECLARES** that the Receiver is not obligated to incur any obligations without having received from the Petitioner prior funding or other payment assurance satisfactory to the Receiver in accordance with the Cash Management System, as defined and described in the Motion;

## RECEIVER TO HOLD FUNDS

[23]   **ORDERS** all funds, monies, cheques, instruments, and other forms of payments received or collected by the Receiver from and after the making of this Order from any source whatsoever, including without limitation the collection of any accounts receivable in whole or in part, whether in existence on the date of this Order or hereafter coming into existence, shall be deposited into the Debtors' bank accounts in accordance with the Cash Management System other than any proceeds arising from the sale of the Debtors' business and assets in connection with the Sale Process (defined below) which sale proceeds shall be deposited into one or more new accounts to be opened by the Receiver (the "**Post Receivership Accounts**") and the monies standing to the credit of such Post Receivership Accounts from time to time, shall be held by the Receiver to be paid in accordance with the terms of this Order or any further Order of this Court;

## SALE PROCESS

[24]   **APPROVES and AUTHORIZES** the Receiver to continue and complete the sale process as further described in the Motion (the "**Sale Process**") including by engaging Kurt Salmon to assist in connection therewith, with such engagement to be in accordance with the terms of this Order;

## EMPLOYEES

[25]   **AUTHORIZES** the Receiver to continue to engage the services of the Debtors' employees until the Receiver, acting for and on behalf of the Debtors, terminates the employment of such employees, including those subject to temporary layoff. The Receiver shall not be liable for any employee related liabilities, including any successor-employer liabilities as provided for in sections 14.06(1.2) of the *BIA* other than such amounts as the Receiver may specifically agree in writing to pay, or in respect of its obligations under sections 81.4(5) and 81.6(3) of the *BIA* or under the *Wage Earner Protection Program Act*;

- 8 -

## PROTECTION OF PERSONAL INFORMATION

[26]    **DECLARES** that pursuant to clause 7(3)(c) of the *Canada Personal Information Protection and Electronic Documents Act*, the Receiver shall disclose personal information on identifiable individuals, which information it has in its possession or under its responsibility, to interested parties or to investors, financiers, prospective purchasers or potential strategic partners, as well as to their advisors, but only to the extent desirable or required, and only upon condition that the persons to whom such personal information is disclosed shall undertake to maintain and protect the privacy of such information and limit the use of such information pursuant to confidentiality agreements entered into with the Receiver or the Debtors in connection with the Sales Process;

## LIMITATION OF LIABILITY

[27]    **DECLARES** that subject to the powers granted to the Receiver pursuant to the terms of paragraph 10 of the Order, nothing herein contained shall require the Receiver to occupy or to take control, or to otherwise manage all or any part of the Property. The Receiver shall not, as a result of this Order, be deemed to be in possession of any of the Property within the meaning of environmental legislation, the whole pursuant to the terms of the *BIA*;

[28]    **DECLARES** that the powers of the Receiver shall be exercised pursuant to its sole discretion and judgment;

[29]    **DECLARES** that section 215 of the *BIA* applies *mutatis mutandis*, and hence that no action lies against the Receiver by reason of its appointment or the execution of the powers granted by the Court, except by leave of the Court. The entities related to the Receiver or belonging to the same group as the Receiver shall benefit from the protection arising under the present paragraph;

## FEES

[30]    **DECLARES** that as security for the professional fees and disbursements incurred in relation to these proceedings, both before and after the date of the Order, a charge and security over the Property is hereby constituted in favour of the Receiver, of the Receiver's attorneys referred to in paragraph [13] and other advisors referred to in paragraphs 10.3(k) and 10.4(n) herein, to the extent of the aggregate amount of $250,000 (the "**Administration Charge**");

[31]    **DECLARES** that the Administration Charge shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, charges, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property charged by such Encumbrances;

- 9 -

[32]   **DECLARES** that the Administration Charge is effective and shall charge, as of 12:01 a.m. (Montreal time) the day of the Order (the "**Effective Time**"), all the Debtors' Property present and future;

[33]   **DECLARES** that notwithstanding: (i) these proceedings and any declaration of insolvency made herein, (ii) any petition for a receiver order filed pursuant to the *BIA* in respect of the Petitioner and any receiving order granting such petition or any assignment in bankruptcy made or deemed to be made in respect of the Petitioner and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by the Receiver pursuant to the Order and the granting of the Administration Charges do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions or conduct meriting a recourse for abuse under an applicable law, and shall be valid and enforceable as against any person, including any trustee in bankruptcy, and any receiver to the Property of the Debtors;

[34]   **AUTHORIZES** the Receiver to deduct advances for the payment of its fees and disbursements, those of its legal counsels referred to in paragraph [13] and other advisors referred to in paragraphs 10.3(k) and 10.4(n) herein, with the consent of the Petitioner, the whole subject to taxation in conformity with the BIA, if applicable.

## FUNDING OF THE RECEIVERSHIP

[35]   **AUTHORIZES** the Receiver, in the name of and on behalf of the Debtor Fletcher Leisure Group Inc., to be at liberty and empowered to borrow from the Petitioner, by way of written request (in a form and manner satisfactory to the Petitioner) to the Petitioner from time to time such monies as the Receiver may consider necessary or desirable (including to fund the Receiver's reasonable fees and disbursements), with such borrowings to constitute indebtedness of the Borrower to the Petitioner under the Credit Agreement (Exhibit R-5) and to accrue interest at the rates provided for in the Credit Agreement, it being understood that such borrowings shall be funded at the sole discretion of the Petitioner and shall be repaid in full upon demand. Such borrowings and any interest thereon shall be secured by the existing security granted by the Debtors in favour of the Petitioner (Exhibit R-7);

## GENERAL

[36]   **DECLARES** that the Order, the Motion and the affidavit do not, in and of themselves, constitute a default or failure to comply by the Debtors under any statute, regulation, license, permit, contract, permission, covenant, agreement, undertaking or any other written document or requirement;

- 10 -

[37]   **DECLARES** that the Receiver is at liberty to serve any notice, circular or any other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to persons or other appropriate parties at their respective given address as last shown in the Records; the documents served in this manner shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three (3) business days after mailing if delivered by ordinary mail;

[38]   **DECLARES** that the Receiver may serve any court materials in these proceedings on all represented parties, by emailing a PDF or other electronic copy of such materials to counsels' email addresses, provided that the Receiver shall deliver "hard copies" of such materials upon request to any party as soon as practicable thereafter;

[39]   **DECLARES** that any party interested in these proceedings may serve any court material in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses, provided that such party shall deliver a "hard copy" on paper of such PDF or electronic materials to the Debtors' and the Receiver's counsel and to any other party who may request such delivery;

[40]   **DECLARES** that, unless otherwise provided herein, ordered by this Court, or provided by the BIA, no document, order or other material need be served on any person in respect of these proceedings, unless such person has served a notice of appearance on the solicitors for the Debtors and the Receiver and has filed such notice with the Court;

[41]   **DECLARES** that any interested Person may apply to this Court to vary or rescind the Order or seek other relief upon five (5) days' notice to the Receiver, the Petitioner and any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order;

[42]   **ORDERS** that the Second Forbearance Agreement (as defined in the Motion) and the Kurt Salmon Engagement Letter (as defined in the Motion), filed respectively as Exhibits R-13 and R-16, be kept confidential and under seal in the office of counsel for the Petitioners until, as the case may be, further order of this Court. However, all creditors of the Petitioners shall be entitled to obtain disclosure of the said Exhibits upon written request and provided they have signed a confidentiality agreement in standard form;

[43]   **DECLARES** that the present Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada;

[44]   **DECLARES** that the centre of main interest of the Debtors is in Québec;

- 11 -

[45]   **DECLARES** that the Receiver shall be authorized to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America, the United Kingdom or elsewhere, for orders which aid and complement the Order and any subsequent orders of this Court and, without limitation to the foregoing, an order under Chapter 15 of the *U.S. Bankruptcy Code*, for which the Receiver shall be the foreign representative of the Debtors. All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Receiver as may be deemed necessary or appropriate for that purpose;

[46]   **REQUESTS** the aid and recognition of any Court or administrative body in any Province of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the United States of America or the United Kingdom and any court or administrative body elsewhere, to act in aid of and to be complementary to this Court in carrying out the terms of the Order;

[47]   **ORDERS** the provisional execution of the present Order notwithstanding any appeal and without the requirement to provide any security or provision for costs whatsoever;


_____

, REGISTRAR

8389713.15

COPIE CONFORME

**EXHIBIT C**
**(Recognition Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| FLETCHER LEISURE GROUP LTD., | Case No. 13-_____ (___) |
| Debtor in a Foreign Proceeding. | |
| In re | Chapter 15 |
| FLETCHER LEISURE GROUP INC. / LE GROUPE DE LOISIRS FLETCHER INC., | Case No. 13-_____ (___) |
| Debtor in a Foreign Proceeding. | |
| In re | Chapter 15 |
| 9266-4382 QUÉBEC INC., | Case No. 13-_____ (___) |
| Debtor in a Foreign Proceeding. | |

## ORDER GRANTING RECOGNITION AS A FOREIGN MAIN PROCEEDING

This matter was brought by PricewaterhouseCoopers Inc. ("PwC" or "Receiver"),

as the Canadian Court–appointed[1] receiver and duly authorized foreign representative for 9266-

4832 Québec Inc. ("HoldCo"), Fletcher Leisure Group Inc./Le Groupe de Loisirs Fletcher Inc.

("Fletcher Canada"), and Fletcher Leisure Group Ltd. ("Fletcher US" and, together with HoldCo

and Fletcher Canada, the "Fletcher Entities" or "Debtors"), upon the *Receiver's Verified Chapter*

---

1.    PwC was appointed as Receiver pursuant to section 243 of Canada's Bankruptcy and Insolvency Act (the "BIA") in proceedings (the "Canadian Proceeding") in the Superior Court (Commercial Division) for the District of Montreal, Province of Québec (the "Canadian Court") by order dated October 22, 2013 (the "Receivership Order").

15 Petition for Recognition of Foreign Proceeding and Related Relief (the "Verified Petition"),[2] filed pursuant to sections 1504 and 1515 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned Chapter 15 cases (the "Chapter 15 Cases").

This Court entered the *Order Granting Emergency Motion for an Interim Stay and Other Provisional Relief* (the "Emergency Order"), dated _____, which imposed a stay of all proceedings in the United States against the Receiver, the Fletcher Entities, or the Fletcher Entities' business, property, or assets located in the United States, and any attempt to collect thereon, and recognized the Receivership Order on an interim basis, and granted certain relief under section 363 and 364 of the Bankruptcy Code on an interim basis.

This Court has determined that due and timely notice of the filing of the Verified Petition was given in accordance with the Emergency Order and the *Order (i) Specifying Form and Manner of Service and Notice, (ii) Scheduling Hearing on Recognition and Additional Relief, and (iii) Setting Deadline For Objections* (the "Notice Order"), and that such notice is adequate for all purposes such that no other or further notice thereof need be given.

This Court has considered and reviewed the other papers, pleadings and exhibits submitted by the Receiver in support of the Verified Petition (collectively, the "Supporting Papers"), including, among other things, (a) the *Affidavit of Bernard Brunet in Support of (i) Verified Chapter 15 Petition for Recognition of Foreign Proceeding and Related Relief and (ii) Motion for Emergency and Final Relief Pursuant to Sections 105(a), 1519, 1520, and 1521 of the Bankruptcy Code* (the "Brunet Affidavit"), (b) the *Memorandum of Law in Support of (i) Verified Chapter 15 Petition for Recognition of Foreign Proceeding and Related Relief and (ii) Motion for Emergency and Final Relief Pursuant to Sections 105(a), 1519, 1520, and 1521 of the*

---

2.   Capitalized terms used, but not defined, herein shall have the meanings set forth in the Verified Petition.

Bankruptcy Code (the "Memorandum of Law"), and (c) the *Motion for Emergency and Final*

*Relief Pursuant to Sections 105(a), 1519, 1520, and 1521 of the Bankruptcy Code* (the "Motion

for Related Relief"), and no objections to the Verified Petition or Motion for Related Relief were

filed. After reviewing the Supporting Papers and with due deliberation and sufficient cause

appearing therefor, the Court finds and concludes as follows:

    (a)    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1410.

    (b)    The Canadian Proceeding is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code because of the following:

        (i)    The Canadian Proceeding is a foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code, and is a foreign main proceeding within the meaning of section 1502(4) of the Bankruptcy Code, because the Canadian Proceeding is pending in the location of the Fletcher Entities' center of main interest;

        (ii)    The Receiver is a person within the meaning of section 101(41) of the Bankruptcy Code and is the duly appointed foreign representative of the Fletcher Entities within the meaning of section 101(24) of the Bankruptcy Code and pursuant to sections 1519 and 1521 of the Bankruptcy Code; and

        (iii)    The Verified Petition seeking recognition under Chapter 15 of the Bankruptcy Code was filed in accordance with sections 1504 and 1515 of the Bankruptcy Code with respect to the Fletcher Entities, and therefore, the Chapter 15 Cases were properly commenced pursuant to such sections.

    (c)    The interest of the public will be served by this Court's granting of the relief requested by the Receiver.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Canadian Proceeding is hereby recognized as a foreign main proceeding pursuant to 11 U.S.C. § 1517.

2. All provisions of 11 U.S.C. § 1520 shall apply automatically upon the entry of this Order.

3. This Court shall retain jurisdiction with respect to the enforcement of this Order.

Dated: New York, New York
   October __, 2013

           _____
           UNITED STATES BANKRUPTCY JUDGE